UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DOMINIC GREEN,<br><br>　　　　　　　Petitioner,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security<br>Administration,<br><br>　　　　　　　Respondent. | Case No. 1:11-cv-00332-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Dominic Green ("Petitioner") seeks review of the Commissioner of the Social Security Administration's final decision denying Petitioner's application for supplemental security income disability benefits under Title XVI of the Social Security Act. (Dkt. 1.) The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record ("AR"), and for the reasons that follow, will affirm the decision of the Commissioner.

**MEMORANDUM DECISION AND ORDER - 1**

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for supplemental security income on January 18, 2006, alleging that he had been disabled and unable to work since October 2, 2000, due to a vascular lesion in his brain stem, fatigue, nausea, back problems, and depression. His application was denied initially and on reconsideration, and a hearing was held on November 6, 2008, before Administrative Law Judge ("ALJ") Lloyd E. Hartford. The ALJ issued a decision finding Petitioner not disabled on February 27, 2009, and Petitioner timely requested review by the Appeals Council.

The Appeals Council denied Petitioner's request for review on June 6, 2011, and the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 416.1481 and 422.210; *See also, Batson v. Comm'r of Social Sec. Admin.*, 359 F.3d 1190, 1193 fn. 1 (9th Cir. 2004) ("Where, as here, the Appeals Council denies a request for review of an ALJ's decision, the decision of the ALJ represents the final decision of the Commissioner."). Petitioner timely filed an appeal of the Commissioner's final decision to this Court on July 22, 2011. (Dkt. 1.) The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the November 6, 2008 hearing, Petitioner was represented by counsel and testified on his own behalf. The ALJ also heard testimony from a medical expert, a vocational expert, and Petitioner's sister. At the time of the hearing, the most recent medical report was from November of 2006. Because of the gap in the medical evidence between 2006 and the 2008 hearing, the ALJ requested an additional consultative

**MEMORANDUM DECISION AND ORDER - 2**

psychological examination, which was completed and admitted into evidence by the ALJ after the hearing concluded. Based upon the findings that Petitioner could perform a limited range of light work and that jobs existed in significant numbers in the national economy which Petitioner was capable of performing, the ALJ issued a decision finding Petitioner not disabled on February 27, 2009. (AR 22.)

Petitioner was born in 1966, making him 34 years of age at the time of his alleged onset of disability date and 39 years of age at the time his application was filed. Petitioner dropped out of high school in the 11th grade and reported prior work experience as an operating engineer, septic tank installer, and construction worker.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920.  At step one, it must be determined whether the claimant is engaged in substantially gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity after his alleged onset date. (AR 13.) At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found that Petitioner suffered from the following severe impairments within the meaning of the Regulations: major depression, history of small capillary telangiectasia of the medulla, and history of compression fractures. (AR 13.)

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for the listed impairments, specifically considering Petitioner's back problems

**MEMORANDUM DECISION AND ORDER - 3**

under Listing 1.00 (*Musculoskeletal System*), his history of capillary telangiectasia under

Listing 11.00 (*Neurological*), and his depression under Listing 12.04 (*Affective*

*disorders*). (AR 14.) If a claimant's impairments do not meet or equal a listing, the

Commissioner must assess the claimant's Residual Functional Capacity ("RFC") and

determine at step four whether the claimant has demonstrated an inability to perform past

relevant work.

The ALJ determined that Petitioner had the RFC to perform light work as defined

in 20 C.F.R. § 416.967(b), subject to several limitations. Specifically, the ALJ found that

Petitioner's RFC was subject to the following limitations:

> The claimant is moderately limited in his abilities to
> understand, remember and carry out both detailed and
> complex instructions; to make judgments on complex work-
> related decisions; to perform activities within a schedule,
> maintain regular attendance, and be punctual within
> customary tolerances; to work in coordination with or
> proximity to others without being distracted by them; to
> complete a normal workday and workweek without
> interruptions from psychologically based symptoms and to
> perform at a consistent pace without an unreasonable number
> and length of rest periods; to interact appropriately with the
> general public; to get along with coworkers or peers without
> distracting them or exhibiting behavioral extremes. His
> abilities to respond appropriately to changes in the work
> setting are not significantly limited.

(AR 15.)

At step four, the ALJ found Petitioner was not able to perform his past relevant

work. (AR 20.) If a claimant demonstrates an inability to perform past relevant work, the

burden shifts to the Commissioner to demonstrate at step five that the claimant retains the

**MEMORANDUM DECISION AND ORDER - 4**

capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. The ALJ found that Petitioner could perform work existing in significant numbers in the national economy, specifically noting positions identified by the vocational expert, which included road roller operator and road oiling truck driver. (AR 21.) Because the ALJ found that Petitioner could perform work existing in significant numbers in the national economy, he concluded that Petitioner was not disabled within the meaning of the Social Security Act. (AR 22.)

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he not only cannot do his previous work but is unable, considering his age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42

**MEMORANDUM DECISION AND ORDER - 5**

U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, when the evidence can reasonably support either affirming or reversing the Commissioner's decision, the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999). The Ninth Circuit has instructed the district courts that the "key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that [the] claimant is not disabled." *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997). "Where evidence is susceptible to more than one rational interpretation, it is the [Commissioner's]

**MEMORANDUM DECISION AND ORDER - 6**

conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## DISCUSSION

Petitioner challenges the ALJ's decision on three grounds. First, Petitioner argues that the ALJ erred in finding Petitioner's testimony concerning the severity of his symptoms not fully credible. Second, Petitioner argues that the ALJ failed to properly evaluate the lay witness statements in the record. Third, Petitioner argues that the ALJ failed to properly evaluate the medical opinion evidence. Given these alleged errors, Petitioner asserts that the ALJ's RFC assessment is not supported by substantial evidence. For the reasons discussed below, given the deferential standard of review the Court is required to employ, Petitioner's arguments will be rejected and the ALJ's decision will be affirmed.

## 1.      Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The Ninth Circuit has made clear that "questions of credibility and resolution of conflicts in the testimony are functions solely" for the Commissioner. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007). A two-part test governs whether a claimant's testimony regarding subjective pain or the severity of symptoms is credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected o produce the pain or other symptoms

**MEMORANDUM DECISION AND ORDER - 7**

alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the claimant presents objective medical evidence of an underlying impairment which could reasonably be expected to produce pain, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (internal quotations and citations omitted).

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). When the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including inconsistencies in claimant's testimony, claimant's daily activities, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side

**MEMORANDUM DECISION AND ORDER - 8**

effects of medications; and treatment measures taken by the claimant to alleviate those symptoms.  *See* Social Security Ruling ("SSR") 96-7p.[1]

Errors in an ALJ's credibility analysis do not necessarily invalidate the entire analysis.  "So long as there remains 'substantial evidence supporting the ALJ's conclusions on . . . credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion,' [the error] is deemed harmless and does not warrant reversal. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)).

At the November 2008 hearing, Petitioner testified that he broke his back in 1997 while working in Alaska. (AR 78-79.) Petitioner alleged an onset of disability date of October 2, 2000, and testified that he was unable to work due to back pain, headaches, and severe depression. (AR 76.) He moved in with his mother and sister in 2002 and estimated that his back pain was 5 or 6 on a scale of 1-10 every day for the past six years. (AR 81.) Petitioner testified that, when he takes over-the-counter medication, his pain level is 5 out of 10. (*Id.*)

Concerning his daily activities, Petitioner testified that he sits in a dark room and has not left his mother's house in at least a year. (AR 83.) He testified that his 85 year old mother and his disabled sister typically did all the housework, cooking, and grocery

---

[1] Social Security Rulings do not have the force of law but must be given some deference as long as they are consistent with the Social Security Act and regulations. *Ukolov v. Barnhart*, 420 F.3d 1002, n.2 (9th Cir. 2005).

**MEMORANDUM DECISION AND ORDER - 9**

shopping. (AR 89.) He stated that, on an average day, he spent four to five hours lying down due to back pain and depression. (AR 92.) When asked why he stays in the house all the time, Petitioner responded that he did not want to deal with people and prefers his own company. (AR 83.) He indicated thoughts of suicide, that he plans on killing himself once he gets his "ducks in a row," and that he almost committed suicide before appearing at the hearing. (AR 94-95.)

The ALJ found that Petitioner's testimony was not fully credible. Applying the two-part test described above, the ALJ found that Petitioner's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (AR 18.) The question before the Court is whether the ALJ offered specific, clear and convincing reasons for rejecting Petitioner's testimony. For the reasons that follow, the Court finds that he did.

The ALJ listed multiple reasons for finding Petitioner's testimony not fully credible. The ALJ noted that "[t]he documentary evidence does not corroborate the claimant's subjective allegations that he is completed [sic] disabled from all work due to symptoms resulting from depression, brain lesion and/or back disorder." (AR 18.) He noted that Petitioner's "description of his pain level was not indicative of disabling pain with or without use of over-the-counter medication." (*Id*.) The ALJ also found Petitioner's degree of treatment and level of medication "was quite minimal and was not indicative of

**MEMORANDUM DECISION AND ORDER - 10**

markedly incapacitating pain, depression or other symptoms." (*Id.*) The ALJ found Petitioner's statement to a physician that he enjoyed activities such as fishing, camping, working on old cars and playing the guitar inconsistent with his testimony at the hearing. (*Id.*) Finally, the ALJ found Petitioner's testimony that he did not leave the house or associate with other people because he preferred his own company was inconsistent with the assertion that he was unable to leave the house due to his mental and physical impairments. (AR 18-19.)

Petitioner argues that the ALJ's adverse credibility finding is not supported by substantial evidence in the record. The Court disagrees. The ALJ's determination that Petitioner's testimony was inconsistent with the documentary evidence is supported by the record. The record contains a progress note from December of 2003 indicating that Petitioner's depression is "controlled on medication." (AR 276.) In April of 2006, Dr. Stephen Asher diagnosed Petitioner with depression, but stated "I find no significant disorganization of motor function and there is no sustained disturbance of gross or dexterous movements." (AR 293.) In the same report, Dr. Asher stated that he "could find no significant restriction in his ability to do work-related physical activities such as sitting, standing, walking, lifting, carrying, handling, hearing, speaking or traveling." (*Id.*)

Consultation notes from 2006 indicate that Petitioner "is able to dress, bathe, care for his own hair, shave, feed himself, and use the bathroom" and that "[h]e also spends time with other people." (AR 307.) The same record provides the following statements: "The [Petitioner] notes a history of depression. However, exams show that he is able to

**MEMORANDUM DECISION AND ORDER - 11**

mentally function within normal limits. He is also currently not in any sort of counseling or taking any medication. Therefore, the [Petitioner] is not functionally limited." (AR 307.) Similarly, a Mental Residual Functional Capacity Assessment completed by Dr. Martin Seidenfeld, Ph.D in November of 2006 indicated that Petitioner's "psychological symptoms would not interfere w/his ability to complete a normal workday or workweek." (AR 319.)

The Court finds the ALJ's adverse credibility determination based upon inconsistencies with the documentary evidence is supported by substantial evidence in the record. A finding that a claimant's testimony is inconsistent with the documentary evidence is a valid reason for rejecting a claimant's testimony. *Tommasetti*, 533 F.3d at 1039. Petitioner directs the Court to evidence in the record that is consistent with Petitioner's testimony. The existence of such evidence, however, cannot overcome an adverse credibility determination where the ALJ gave specific, clear and convincing reasons for making the finding. *See Tackett*, 180 F.3d at 1098. Here, the Court finds that the ALJ's determination that Petitioner's testimony was inconsistent with the documentary evidence was a clear and convincing reason for finding him not credible.

Petitioner also argues that the ALJ's reliance on Petitioner's failure to seek treatment constituted legal error because Petitioner testified that he could not afford treatment. Petitioner is correct that an ALJ may not hold the failure to seek treatment against a claimant where the record indicates that he or she cannot afford the treatment. *See* SSR 96-7p ("adjudicator must not draw any inferences about an individual's

**MEMORANDUM DECISION AND ORDER - 12**

symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment" including the inability to pay); *see also Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007).

Notwithstanding the above rule, the Court rejects this argument primarily for two reasons. First, the record indicates that, when Petitioner did seek treatment, the treatment prescribed was conservative. For instance, when Petitioner saw Dr. Ollie at the Middleton Clinic in May of 2005, Dr. Ollie recommended starting the Petitioner on a "low dose of Zoloft." (AR 273.) The medical records also indicated that Petitioner's pain was controlled with over-the-counter medications and Petitioner was taking Ibuprofen for his back pain. These were clear and convincing reasons to reject Petitioner's testimony. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (indicating that conservative treatment can be "sufficient to discount a claimant's testimony regarding severity of an impairment); *See also, Tommasetti*, 533 F.3d at 1039 (stating that the failure to seek an aggressive treatment program or seeking an alternative treatment program permits the inference that the pain is not as disabling as reported); *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (stating that an ALJ may consider a claimant's lack of prescription medication in determining whether a claimant's claims of disabling pain are credible).

Second, although Petitioner testified that he did not have the funds to seek treatment, he also indicated that he did not seek free or low-cost treatment options for

indigent patients provided by the State of Idaho. Specifically, when Petitioner testified

that he did not have the money to seek treatment, the ALJ indicated that, in Idaho, the

counties are responsible for providing at least initial evaluations for indigent patients.

(AR 77.) When the ALJ asked Petitioner whether he sought such treatment, Petitioner

indicated that he had not. (*Id.*)

The Ninth Circuit has made clear that, "if a claimant complains about disabling

pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, the

ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated."

*Orn*, 495 F.3d at 638. The mere statement that a claimant cannot afford treatment, without

substantiation, cannot be used as a free pass to avoid this inference. Social Security

Ruling 96-7p suggests that indigent claimants should seek free or low-cost medical

services when they are available. SSR 96-7p (referencing the availability of free or low-

cost medical services as a relevant consideration in the credibility determination). When

free or low-cost medical services are available to an indigent claimant, the claimant's

poverty is not a valid reason for failing to seek treatment. Petitioner's failure to seek

treatment, along with the conservative treatment he received when he did seek medical

care and combined with Petitioner's testimony that he did not leave the house because he

was anti-social and preferred his own company, gave rise to a valid inference that

Petitioner did not seek treatment because his symptoms were not as severe as alleged. The

Court finds that the ALJ did not commit legal error in this regard.

**MEMORANDUM DECISION AND ORDER - 14**

Finally, Petitioner argues that the ALJ improperly relied on Petitioner's reported activities as a reason for finding him not credible. One of the medical reports prepared by Petitioner's consulting psychologist Dr. Starr stated that Petitioner enjoyed activities such as fishing, camping, working on old cars and playing guitar. The ALJ referenced these activities in his adverse credibility determination. Petitioner argues that there is nothing in the record to suggest that Petitioner engaged in these activities after his onset of disability date. Indeed, Petitioner argues that the record supports the opposite conclusion. Petitioner directs the Court to the Adult Function Report submitted by Petitioner in which he indicated that he enjoyed the above activities before his illness. (AR 168.) Petitioner's sister, Kathryn Green, who submitted a Third Party Function Report, corroborated Petitioner's claim and stated that Petitioner "can't pursue former hobbies/interests due to his failing medical condition." (AR 162.)

It is the role of the ALJ to resolve ambiguities in the record. *Reddick*, 157 F.3d at 722. Petitioner argues that the record is not ambiguous as to his activities -- he argues that the record is clear that he did not engage in those activities after his onset of disability. The Court finds, however, that the record is ambiguous in this regard. Dr. Starr did not indicate when Petitioner engaged in these activities -- only that Petitioner reported he enjoyed engaging in the activities. And one of the medical records from May of 2005 indicates that Petitioner "spends much of his time in his room listening to music and watching television. . . [and] [h]e also plays the guitar for an half-hour to an hour per day." (AR 272.) This last statement is inconsistent with Petitioner's testimony at the

**MEMORANDUM DECISION AND ORDER - 15**

hearing. Because the record is ambiguous in this regard, it was the province of the ALJ to resolve such ambiguity and the Court may not disturb the finding on appeal. However, even if the Court were persuaded that the record did not support the ALJ's reference to Petitioner's activities, that finding would not alter the Court's ultimate decision on this issue, because the Court already has determined that the ALJ provided other clear and convincing reasons for finding Petitioner not credible.

For the reasons set forth above, the Court finds that the ALJ provided specific, clear and convincing reasons for rejecting Petitioner's testimony. Thus, the ALJ's adverse credibility determination will be upheld.

## 2.    Lay Witness Evidence

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006).  And the Ninth Circuit has made clear that this includes testimony from friends and family members. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993) ("friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [a claimant's] condition."). "Disregard of this evidence violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).  Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work *is* competent evidence . . . and therefore *cannot* be disregarded without comment." *Stout*,

**MEMORANDUM DECISION AND ORDER - 16**

454 F.3d at 1053 (emphasis in original).  "If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness." *Dodrill*, 12 F.3d at 919.

Here, Petitioner's sister testified at the November 2008 hearing, submitted a Third Party Function Report, (AR 158), and submitted a letter in support of her brother. (AR 198.) The record also contains letters from Petitioner's mother, (AR 195), his aunt, (AR 194), and a family friend. (AR 196.) Considering these submissions, the ALJ stated that they were "considered relatively credible to the extent that the claimant has a history of depression, back injury and brain lesion." (AR 19.) The ALJ also stated, however, that their opinions that the claimant is disabled were not given great weight because they:

> (1) relied quite heavily on the subjective report of symptoms and limitations provided by the claimant; a premise which the undersigned has not credited for reasons set forth above;
>
> (2) the claimant's consulting neurologist stated he did not find significant restrictions;
>
> (3) the claimant's consulting psychologist identified moderate mental work-related limitations;
>
> (4) the claimant's use of medication is inconsistent with the level of symptoms alleged; and
>
> (5) the medical evidence in the record failed to support the degree of limitation alleged by the third parties.

(AR 19.)

Petitioner argues that the ALJ's partial rejection of the lay witness statements constituted error because he did not provide reasons for doubting the statements that were

**MEMORANDUM DECISION AND ORDER - 17**

germane to each witness. Petitioner does not offer an explanation as to why the above findings were not germane to each witness, but the Court infers from the argument that Petitioner believes the reasons for rejecting the third party statements were not germane to each witness because they applied to all the witnesses. The Court disagrees.

Germane simply means that the justification is relevant and suitably related to each lay witness's statement. While the Court can postulate circumstances under which justifications given by an ALJ, when applied equally to multiple lay witnesses, might not be germane to each individual witness, such circumstances are not present in this case. Each of the lay witness statements in this case did rely heavily upon Petitioner's subjective reports of his symptoms. The Ninth Circuit has held that, when an ALJ has rejected a claimant's testimony, and the lay witness statement relies upon the claimant's subjective reports of his or her symptoms, the ALJ may reject the lay witness statement for the same reasons the ALJ found the claimant to be not credible. *Valentine v. Comm'r Social Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). That is precisely what the ALJ did in this case.

Moreover, the ALJ rejected the lay witness statements in this case because they were not supported by the medical evidence in the record. This too has been held to be a valid reason for rejecting a lay witness statement. *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). Based on the above, the Court finds that the ALJ did not improperly evaluate the lay witness statements in this case.

**MEMORANDUM DECISION AND ORDER - 18**

3.     **Medical Evidence**

Petitioner asserts that the ALJ failed to properly evaluate the medical opinion

evidence, affording too much weight to certain examiners and affording too little to

others. Specifically, Petitioner argues that the ALJ gave too much weight to the opinion

of Dr. Asher, a neurologist, who examined Petitioner in early 2006. Petitioner argues that

the ALJ should not have given Dr. Asher's opinion so much weight because, as a

neurologist, he did not perform any physical functional capacity tests and limited his

exam to Petitioner's history of seizures, which were unrelated to Petitioner's pain and

fatigue. Petitioner also argues that the ALJ afforded too little weight to the opinion of Dr.

Starr, who evaluated Petitioner in 2006 and again in 2008. For the reasons set forth

below, the Court finds no error in the ALJ's evaluation of the medical evidence.

It is well settled that the ALJ is responsible for resolving conflicts and ambiguities

in the medical evidence. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Here,

the ALJ provided a through discussion of the limited medical opinion evidence in the

record. (AR 16-20.)

Dr. Stephen Asher, a neurologist, examined Petitioner on April 26, 2006. (AR

292.) The ALJ noted that Dr. Asher found no significant restriction in Petitioner's ability

to do work-related physical activities such as sitting, standing, walking, lifting, carrying,

handling, hearing, speaking or traveling. (AR 19, 293.) The ALJ's overview of Dr.

Asher's opinion accurately reflects Dr. Asher's opinion as it appears in the record.

Petitioner argues that the ALJ placed too much weight on Dr. Asher's opinion. This

**MEMORANDUM DECISION AND ORDER - 19**

argument is not supported by the record. Rather than placing undue weight on the opinion, the ALJ expressly stated that Dr. Asher's opinion was only "partially credited." (AR 19.) Moreover, rather than accepting Dr. Asher's opinion that Petitioner had no significant restrictions in work-related physical activities, the ALJ stated that he was "reduc[ing] the claimant's residual functional capacity to the light level of exertion due to further consideration of the combined effect of his impairments including pain on his activities." (AR 19.) Petitioner's argument that the ALJ placed undue weight on Dr. Asher's opinion does not accurately reflect the ALJ's treatment of the opinion in his decision and the Court finds that the ALJ did not err in his treatment of the opinion.

Petitioner next argues that the ALJ placed too little weight on the opinions of Dr. David Starr. Dr. Starr evaluated Petitioner twice -- once in 2006 and again in 2008 after the hearing. The post-hearing evaluation was requested by the ALJ due to the lack of medical records between 2006 and the date of the hearing in November of 2008. In the 2006 evaluation, Dr. Starr indicated that Petitioner was significantly depressed and had problems with chronic pain. (AR 370.) Dr. Starr also stated that Petitioner was "well oriented," his general knowledge was estimated above average, he has problems with abstract thinking, but can make reasonable judgments most of the time, and that Petitioner was likely capable of managing his funds. (AR 370-71.)

**MEMORANDUM DECISION AND ORDER - 20**

The 2006 report also indicated a Global Assessment of Functioning ("GAF") of 50, indicative of severe symptoms in social functioning related to depressed mood.[2] (AR 370.) The report from 2008 did not differ significantly from the 2006 report, with the exception that the 2008 report indicated a GAF of 55 -- indicating moderate to severe symptoms in social functioning related to depressed mood. (AR 375.)

Considering Dr. Starr's reports, the ALJ stated that "Dr. Starr's opinion is credicted and is supported by clinical interview and examination findings and is not significantly different than the medical expert's opinion concerning the claimant's mental work-related limitations." (AR 19.) The ALJ stated, however, that he did not place significant weight on the GAF scores. (AR 19-20.) Rather, the ALJ placed more weight on Dr. Starr's narrative evaluation "not only because GAF scores are premised on the claimant's subjective statements . . . but because Dr. Starr's opinion[s] about the claimant's mental work capacity are better supported by the narrative reports and the narrative reports significantly outweigh the GAF scores." (AR 20.) Petitioner argues that the ALJ under emphasized the GAF scores and that the ALJ should not have rejected the GAF scores due to their subjective nature because "GAF scores are, by nature, a result of an examination with a patient through a session of question and answers." (*Pet.'s Reply Br.*

---

[2] The Global Assessment of Functioning, or GAF, is a numeric scale used by mental health clinicians and physicians to subjectively rate the social, occupational, and psychological functioning of adults. The scale is presented and described in the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) published by the American Psychiatric Association.

**MEMORANDUM DECISION AND ORDER - 21**

*in Supp. of Pet. for Review* at 5, Dkt. 22.) Petitioner's point in this regard is well taken, but ignores the fact that the ALJ also placed less weight on the GAF scores because he found Dr. Starr's narrative evaluation more compelling. That decision was well within the boundaries of the ALJ's duty to evaluate, interpret, and resolve conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The Court finds that the ALJ did not err in evaluating Dr. Starr's opinion.

**4.      Residual Functional Capacity Assessment**

When a claimant's impairments are not sufficiently severe to equal or exceed a listed impairment, the ALJ is required to assess the claimant's residual functional capacity ("RFC"). A claimant's RFC is the most she can do despite her limitations, and the purpose of the assessment is to determine whether the claimant is capable of performing past relevant work or other work existing in significant numbers in the national economy. *See* 20 C.F.R. § 404.1545. According to the Administration, "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," which is defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8. "The RFC assessment must be based on all of the relevant evidence in the case record," including, reports of daily activities, lay evidence, medical source statements, and a claimant's testimony concerning the effects of symptoms. SSR 96-8 (emphasis in original).

In this case, the state agency medical consultants found that Petitioner retained the RFC to perform medium work. The ALJ rejected that assessment, stating that, "[d]ue to

**MEMORANDUM DECISION AND ORDER - 22**

additional evidence and testimony not before the State agency and further consideration of the claimant's impairments and the claimant's subjective complaints, the undersigned has reduced the claimant's residual functional capacity to the light level of exertion and has imposed additional mental work-related limitations." (AR 20.)

The ALJ assessed Petitioner's RFC as follows:

> The claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except with the following additional limitations: The claimant is moderately limited in his abilities to understand, remember and carry out both detailed and complex instructions; to make judgments on complex work-related decisions; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to work in coordination with or proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. His abilities to respond appropriately to changes in the work setting are not significantly limited.

(AR 15.)

Based on the allegations that the ALJ improperly found Petitioner's testimony not fully credible, did not properly consider the lay witness evidence, and did not properly consider the medical evidence, Petitioner argues that the ALJ's RFC assessment was not supported by the record. The Court disagrees. As outlined in the above discussion, the Court has determined that the ALJ did not improperly assess Petitioner's credibility,

**MEMORANDUM DECISION AND ORDER - 23**

improperly evaluate the lay witness statements or the medical evidence. Based on these

determinations, Petitioner's argument must fail.

## **ORDER**

Based upon the foregoing, the Court being otherwise fully advised in the premises,

**IT IS HEREBY ORDERED that** the Commissioner's decision finding that the

Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED**

and that the petition for review is **DISMISSED**.



DATED: September 24, 2012

Honorable Candy W. Dale
Chief United States Magistrate Judge